**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Richard A. HERNANDEZ,**
**Defendant-Appellant.**

**No. 77–2451.**

United States Court of Appeals,
Ninth Circuit.

Feb. 27, 1978.

Thomas R. Sheridan (argued), of Simon & Sheridan, Los Angeles, Cal., for defendant-appellant.

Wilfred A. Hearn (argued), Los Angeles, Cal., for plaintiff-appellee.

OPINION

Appeal from the United States District Court for the Central District of California.

Before CHAMBERS and HUFSTED-LER, Circuit Judges, and KING,* District Judge.

HUFSTEDLER, Circuit Judge:

The issue on this appeal is whether double jeopardy foreclosed the Government from prosecuting Hernandez for perjury (18 U.S.C. § 1623) based upon his alleged false testimony in his prior trial charging him with violating 18 U.S.C. § 1001, in which he was acquitted. Applying *Ashe v. Swenson* (1970) 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469, we hold that Hernandez' prosecution for perjury was barred by double jeopardy.

Hernandez' first trial was based upon an indictment returned on May 5, 1976, charging him with multiple violations of 18 U.S.C. § 1001 (making false statements to the United States Department of Commerce). Hernandez had a contract with the Department of Commerce to provide legal services to minority businessmen. The indictment charged that Hernandez overbilled the Government for these services because he had in reality spent "substantially less" time providing legal services than he represented in his billings. The perjury prosecution grows out of Hernandez' testimony at the first trial concerning legal services that he claimed to have rendered for two minority businessmen, Iwamasa and Martinez, which was the subject of count 14 of the indictment.[1]

Iwamasa testified at the prior trial that he attended two to four meetings at which Hernandez and Martinez were present, and on occasion, Lachner, an associate of Hernandez'. According to Iwamasa, the purpose of these meetings was to try to persuade Hernandez to invest in a business that he and Martinez were trying to form, called "Con Sabor Latino." He said that little or no legal services were provided in these meetings. Lachner testified that he attended several meetings with Hernandez, Martinez, and Iwamasa, and that he prepared three memoranda for Hernandez which analyzed the proposed business venture and supplied investment advice. The Government did not produce Martinez at the first trial. Hernandez, testifying on his own behalf, denied overbilling the Government. According to his testimony, the meetings with Iwamasa, Martinez, and Lachner concerned not only his personal investment in Con Sabor Latino, but some legal matters as well. The basis for the present indictment is Hernandez' prior testimony that he had met with Martinez alone several times before he met with Iwamasa and before Lachner was involved in the transactions. These meetings, he claimed, were exclusively legal in nature and provided the basis for most of the billings challenged in count 14.

At the close of the Government's case, Hernandez' motion for judgment of acquittal was granted as to a number of counts, but the motion was denied with respect to six counts, including count 14.

After five days' deliberation, the jury announced that it was hopelessly deadlocked. After determining that the jury was evenly divided, the district court declared a mistrial. Hernandez filed a motion

* *Honorable Samuel P. King, Chief Judge, United States District Court, District of Hawaii, sitting by designation.*

1. In pertinent part, the indictment charged that on July 25, July 31, and August 31, 1973, Hernandez "knowingly and willfully made and caused to be made a false, fictitious, and fraudulent statement in representation as to the material facts in a matter within the jurisdiction of the United States Department of Commerce in that [Hernandez] certified in request for reimbursement forms and accompanying sheets describing legal services that certain legal services had been performed for Yukio Iwamasa and Bob Martinez, and that certain persons had

worked to perform said legal services as follows:

| Name | Days Worked | Hours Worked | Dates Worked |
|---|---|---|---|
| Richard A. Hernandez | 4½ | 36 | June 12 and 18, July 24 and 25, and August 2, 1973 |
| Ronald Lachner | 1½ | 12 | July 27 and August 1, 1973 |
| Betty Nelms | 1 | 8 | June 15 and July 26, 1973 |

and that defendant RICHARD ALBERT HERNANDEZ was thereby entitled to total payment of $1,420.00 from the United States Department of Commerce;

for judgment of acquittal upon the remaining counts of the indictment. In opposing the motion, the prosecuting attorney told the court that Martinez had been located and interviewed and that he would testify that he had never met with Hernandez alone. Accordingly, the prosecutor contended that Hernandez should be retried at least on count 14. Following argument, the district court on November 8, 1976, granted Hernandez' motion for judgment of acquittal as to all the remaining counts, including count 14.

The present indictment was returned on February 2, 1977. The indictment recited that Hernandez had testified falsely under oath in his prior trial and that it was "a matter material to that trial to determine whether or not Yukio Iwamasa had been present on each occasion when [Hernandez] had met with [Martinez] concerning the proposed business venture 'Con Sabor Latino.'" The indictment stated that the testimony was false because Hernandez knew that "Iwamasa had been present on each occasion when [Hernandez] had met with [Martinez] concerning the proposed business venture."[2]

Among Hernandez' pretrial motions was a motion to dismiss the indictment on grounds of double jeopardy, *res judicata*, and collateral estoppel. The motion was denied and the second trial began on May 10, 1977. After the jury returned a guilty verdict, Hernandez moved for judgment of acquittal, or in the alternative, for a new trial. The motions were denied, and Her-

nandez was sentenced to three years' probation. This appeal follows.

Under *Ashe v. Swenson, supra*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469, the Fifth Amendment guarantee against double jeopardy encompasses the doctrine of collateral estoppel. The doctrine (recently renamed "issue preclusion") is defined as follows:

"When an issue of fact or law is actually litigated and determined by a final and valid judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."

(Restatement of the Law, 2d, Judgments, § 68 (Tent. Draft No. 1, March 28, 1973).)

The collateral estoppel analysis involves a three-step process: (1) An identification of the issues in the two actions for the purpose of determining whether the issues are sufficiently similar and sufficiently material in both actions to justify invoking the doctrine; (2) an examination of the record of the prior case to decide whether the issue was "litigated" in the first case; and (3) an examination of the record of the prior proceeding to ascertain whether the issue was necessarily decided in the first case.

The issue at the first trial was whether Hernandez actually spent 36 hours of his time performing legal services for Iwamasa and Martinez, or whether he spent "substantially less" than that amount of time for which he billed the Government. The Government's theory in the first case was

"Whereas in truth and in fact, as defendant RICHARD ALBERT HERNANDEZ then and there well knew, the time actually spent in the performance of legal services for Yukio Iwamasa and Bob Martinez was substantially less than that represented by defendant RICHARD ALBERT HERNANDEZ."

2. The testimony upon which the indictment was based was set forth in the indictment as follows:

"Mr. Martinez is a printer and he came to my office three or four times for very lengthy meetings between he and myself . . .."

* * * * * *

"When Mr. Martinez came to me, the three or four meetings we had prior to even meeting Mr. Yukio Iwamasa, he stated that his main purpose in coming to me was to get a formal business entity together . . .."

* * * * * *

"The individual who testified in this case is Yukio Iwamasa whom I did not meet until after three or four meetings with Mr. Martinez."

* * * * * *

"I received a [brochure]—one, maybe two, I don't really remember, from Martinez alone before I even met Mr. Iwamasa . . .."

* * * * * *

"The fourth or fifth meeting that I had with Mr. Martinez, Mr. Iwamasa, Yukio Iwamasa, attended and that was the first time that I had ever met Yukio. . . ."

* * * * * *

"That is not counting, however—that is not counting the time that I spent with Martinez on the two to four meetings that I had before, two of which were rather lengthy."

that all of the time that Hernandez spent in performing legal services for Iwamasa and Martinez occurred when both Iwamasa and Martinez were present. The Government produced testimony from both Iwamasa and from Lachner proving joint meetings and tending to prove that the joint meetings did not take 36 hours of Hernandez' time nor did those meetings primarily involve legal services. Hernandez did not deny that the joint meetings occurred, nor did he deny that at least a significant amount of the time at those meetings was involved with non-legal advice. Hernandez' testimony was that the hours of his time that he billed to the Government were based primarily upon meetings that he had with Martinez alone. In short, the issue in both trials was how many hours Hernandez spent with Martinez giving legal advice in connection with the Iwamasa-Martinez business venture.[3]

The first two steps in our issue preclusion inquiry have been satisfied. The issue at both trials was substantially identical, and the issue was actually litigated in the former trial. Therefore, the only question which is arguably open is whether the billable time issue was decided in Hernandez' favor when the district court granted his motion for judgment of acquittal in the first trial.

The court was fully aware of the Government's claim that Hernandez had lied about the amount of time that he had spent with Martinez before the judgment of acquittal was granted. In arguing the motion for judgment of acquittal, the Government stated:

"The Government has no choice but to point out that in this case further development will take place because a missing witness [Martinez] has been located, a witness whose testimony by affidavit in the Government's response is in direct contrast to Mr. Hernandez' testimony. . . . [O]n the record we have here there's every indication that the defendant did not tell the truth at the first trial . . . [and] there are certain public policy reasons for retrying a defendant for whom the evidence indicates did not tell the truth at least with regard to one material fashion [sic] with regard to [count 14]."

The district court necessarily decided that Hernandez' billable time was not confined to the meetings all the witnesses agreed had been held among Hernandez, Iwamasa, and Martinez. The testimony of all the witnesses agreed upon the fact that those meetings did not consume 36 hours. The only difference between the testimony of Hernandez and the other witnesses on those meetings was not their duration, but their individual appraisals about how much of the meeting time was devoted to the potential for Hernandez' personal investment as against the amount of time giving legal advice. The predicate for the district court's conclusion that Hernandez did not spend "substantially less" time than he billed thus depended upon the district court's crediting, at least in part, Hernandez' testimony about the substance of the meetings with Martinez and Iwamasa and the testimony that other meetings occurred with Martinez alone.[4]

---

**3.** "An issue on which relitigation is foreclosed may be one of evidentiary fact, of 'ultimate fact' (i. e., the application of law to fact), or of law. . . . Thus, for example, if the party against whom preclusion is sought did in fact litigate an issue of ultimate fact and suffered an adverse determination, new evidentiary facts may not be brought forward to obtain a different determination of the ultimate fact . . ." (Restatement of Law, 2d, Judgments, *supra*, § 68, Comment *c*.)

**4.** The district court expressed its conclusion that the Government had not successfully proved that Hernandez did not spend substan-

tially the amount of time that he billed, when it stated:

"[A]s I reviewed my notes and I reviewed the motion for acquittal and all of the documents filed on behalf of and against and as I sit here right now, I could not say that even in a civil case has the Government sustained by a preponderance of the evidence an amount of money due from Hernandez to the Government." In granting the motion for judgment of acquittal, therefore, the district court necessarily concluded that Hernandez' legal services were not confined to the hours Hernandez spent in joint conference with Iwamasa and Martinez.

The case most closely analogous to this one is *United States v. Nash* (4th Cir. 1971) 447 F.2d 1382. Nash was first tried for mail theft. Postal inspectors testified that they had seen her remove from a mail box an envelope in which the inspectors had placed three marked quarters. They followed Nash into the ladies' rest room and discovered the marked quarters in her possession. She testified that she did not take the envelope from the mail box and that she obtained the quarters from a dollar change machine. The jury acquitted her of the mail theft charge. Thereafter, the Government prosecuted her for perjury and established that she could not possibly have obtained the quarters from the change machine as she had testified in the first trial. She was convicted of perjury. The Fourth Circuit, following *Ashe*, held that her perjury trial was barred by double jeopardy. The key question in both cases was whether she had obtained the coins from the stolen mail. The court explained:

> "Of course the Government did not have to prove [in the mail theft trial] that she had not obtained the coins as she explained, but it did have the burden of establishing that she had taken the letter containing the coins from the mail. The change machine explanation was part of her defense and had to be weighed by the jury. Consequently, it cannot have been simply a collateral issue. While she was under no obligation to prove that the coins had not come from the mail box, still when her story was adduced, it created conflict with the Government's proof. There were but two conflicting explanations of her possession to be considered. Thus, the jury 'necessarily' had to pass upon the truthfulness of her account." (447 F.2d at 1385.)

(*Cf. Phillips v. United States* (4th Cir. 1974) 502 F.2d 227; *United States v. Brown* (8th Cir. 1977) 547 F.2d 438.)[5]

The Government did not have to prove that Hernandez did not spend billable time with Martinez, apart from the meetings with him and his partner. But it did have the burden of proving that Hernandez spent substantially less billable time than that for which he charged the Government. Hernandez' explanation of his time spent with Martinez alone was part of his defense and it had to be weighed by the jury. His explanation cannot have been simply a collateral issue. The court was required to resolve the conflicting explanations as part of its decision upon the motion for judgment of acquittal in the first trial. Thus, the court "necessarily" had to pass upon the truthfulness of his account.

REVERSED.

---

**5.** We are aware that the Second Circuit has given an extremely restrictive reading of *Ashe*. (*E. g., United States v. Seijo* (2d Cir. 1976) 537 F.2d 694; *United States v. Cala* (2d Cir. 1975) 521 F.2d 605; *United States v. Cioffi* (2d Cir. 1973) 487 F.2d 492.) These cases can be factually distinguished from the case at bar, but, more important, the rationale of these cases cannot be squared with the teachings of the United States Supreme Court in *Ashe v. Swenson, supra*, as reaffirmed in *Harris v. Washington* (1971) 404 U.S. 55, 92 S.Ct. 183, 30 L.Ed.2d 212; *Turner v. Arkansas* (1972) 407 U.S. 366, 92 S.Ct. 2096, 32 L.Ed.2d 798.