**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

BUENAVENTURA CASTILLO-BASA,
          *Defendant-Appellant.*

No. 05-50768

D.C. No.
CR-05-00734-JAH
Southern District
of California,
San Diego

ORDER

Filed July 24, 2007

Before: Stephen Reinhardt, Stephen S. Trott, and
Kim McLane Wardlaw, Circuit Judges.

Order;
Dissent by Judge Callahan

---

## ORDER

An active judge *sua sponte* called for rehearing en banc.
The matter failed to receive a majority of the votes of the non-
recused active judges in favor of en banc consideration. Fed.
R. App. P. 35(b).

The *sua sponte* call for rehearing en banc is rejected.

---

CALLAHAN, Circuit Judge, with whom O'SCANNLAIN,
KLEINFELD, TALLMAN, and BEA, Circuit Judges, join,
dissenting from the denial of rehearing en banc:

I respectfully dissent from our denial of rehearing en banc
because I read the panel majority as holding, in essence, that,

if a criminal defendant lies to a jury persuasively, the government cannot prosecute him for perjury. In my opinion, this is contrary to Supreme Court precedent and our prior opinions. Moreover, it allows a fundamental constitutional principle — that a person may not be twice placed in jeopardy for the same offense — to be used as a vehicle for protecting perjury.

I.

The government indicted Castillo-Basa for being a previously deported alien found in the United States in violation of 8 U.S.C. § 1326. *United States v. Castillo-Basa*, 478 F.3d 890, 894 (9th Cir. 2007). Through discovery, Castillo-Basa learned of the existence of an audio tape of his deportation hearing, and that the government could not locate this tape. *Id.*

Castillo-Basa then moved to dismiss the indictment claiming that there was no prior deportation. In support of his motion, he filed a sworn declaration stating that "[p]rior to May 2, 1996, I never appeared before an immigration judge" and "prior to May 2, 1996, I was never given an immigration hearing." *Id.* The district court did not dismiss the case, and the matter proceeded to trial, at which time the government sought to prove that Castillo-Basa had been ordered deported without the lost audio tape. *Id.* At trial Castillo-Basa testified

> that he was supposed to appear before an immigration judge on April 30, but that on the date of the hearing, no one came to get him out of his cell. He further testified that he had never come before an immigration judge and that he did not see any representative of the INS until May, when the agent took him from his cell to the Mexican border.

*Id.*

The majority recites that the jury was instructed, that to prove previous deportation, the government must establish

"(1) that a deportation occurred as to the defendant and, as a result, (2) a warrant of deportation was issued, and (3) executed by the removal of the defendant from the United States." *Id.* at 898 (internal punctuation modified). The defense theory was that, in order to be deported, an alien must be brought before an immigration judge and that Castillo-Basa was never placed in front of a judge. *Id.* at 894. The district court did not agree. It rejected Castillo-Basa's proposed jury instruction that the government was required to prove that he appeared before the immigration judge. *Id.* at 894-95, 910. In addition, when the jury specifically asked if a defendant had to be present in front of a judge, the district court responded "no," but that the jury could "consider whether or not the defendant was present before the immigration judge in deciding whether or not a deportation proceeding actually occurred as to the defendant." *Id.* at 910. The jury acquitted Castillo-Basa of the illegal reentry offense. *Id.* at 895.

After the trial, the government located the tape recording of Castillo-Basa's deportation hearing. The majority opinion recounts:

> On the recording, Immigration Judge John Williams recited the names of individuals who were to have a deportation hearing that day; Castillo-Basa's name was among those listed. An individual responded to the name "Buenaventura Castillo-Basa" and admitted that he had been convicted of a crime in December 1985. The details provided by the responding individual regarding the 1985 conviction, such as the date of the offense and the amount of time served, correlate with the details of Castillo-Basa's criminal history.

*Id.*

On April 27, 2005, a grand jury indicted Castillo-Basa on two counts of perjury charging him with submitting a false

declaration and with falsely testifying under oath. *Id*. Castillo-Basa filed a motion to dismiss the indictment on the basis of double jeopardy and collateral estoppel. *Id*. The district court denied the motion, concluding that Castillo-Basa's "veracity with regard to whether he had attended a deportation hearing had not necessarily been decided in the first trial" and that "Castillo-Basa had taken unfair advantage of the government's inability to locate the tape recording by giving perjured testimony and, in so doing, had violated public policy and adversely affected the integrity of the judicial process." *Id*.

Castillo-Basa appealed, and the panel majority reversed the district court and directed the dismissal of the perjury indictment. *Id*. at 906.

## II.

The panel majority's grant of relief is based on a strained interpretation of both the law and the facts. The Supreme Court applied collateral estoppel to a prior judgment in a criminal case in *Ashe v. Swanson*, 397 U.S. 436, 443 (1970). In *Ashe*, there was a single underlying incident: six men engaged in a poker game in the basement of a home were robbed by three or four masked men armed with a shotgun and pistols. *Id*. at 437. Ashe was tried for robbing one of the poker players and acquitted. *Id*. at 439. Six weeks later he was tried for robbing another participant in the poker game, and convicted. *Id*. at 439-40. The Supreme Court set aside Ashe's conviction, noting:

> the record is utterly devoid of any indication that the first jury could rationally have found that an armed robbery had not occurred, or that Knight had not been a victim of that robbery. The single rationally conceivable issue in dispute before the jury was whether the petitioner had been one of the robbers. And the jury by its verdict found that he had not.

*Id.* at 445. In our case, the jury was instructed to determine whether the Government had proved deportation beyond a reasonable doubt, not whether Castillo-Basa had actually appeared before an immigration judge.

Nonetheless, the panel majority manipulates both the law and the facts in an effort to apply collateral estoppel to Castillo-Basa's prosecution. The panel majority starts by noting, that since *United States v. Hernandez*, 572 F.2d 218, 220 (9th Cir. 1978), we have applied *Ashe* through a three-step process:

> (1) An identification of the issues in the two actions for the purpose of determining whether the issues are sufficiently similar and sufficiently material in both actions to justify invoking the doctrine; (2) an examination of the record of the prior case to decide whether the issue was "litigated" in the first case; and (3) an examination of the record of the prior proceeding to ascertain whether the issue was necessarily decided in the first case.

However, the panel majority fails to adhere to the proper definition of the critical third prong — "whether the issue was necessarily decided in the first action." The Supreme Court in *Ashe* explained that for this prong:

> Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.

397 U.S. at 444 (internal quotation omitted). In accordance with *Ashe*, in *Hernandez*, we stressed that collateral estoppel

only applies where "an issue of fact or law" is "actually litigated and determined" *and* the "determination is essential to the judgment." 572 F.2d at 220. The objective application of this standard supports the district court's denial of Castillo-Basa's motion to dismiss the indictment.

The panel majority, however, by focusing on what the defendant wanted the jury to decide instead of what the jury was instructed to decide, concludes that the jury in the first trial must have decided that Castillo-Basa was telling the truth when he testified. "The jury at Castillo-Basa's trial necessarily decided the issue of whether Castillo-Basa was afforded a deportation hearing at which he was present. It also necessarily decided that his statements were not false." *Castillo-Basa*, 483 F.3d at 899. This determination is simply wrong as a matter of law and fact, and raises an improper bar against perjury prosecutions whenever defendants testify and are acquitted at trial.

Although Castillo-Basa testified that he was not present at the deportation hearing, a determination of his veracity was not "essential to the judgment." The trial judge rejected Castillo-Basa's request for a jury instruction that would have made his presence at the deportation hearing an element of the crime (a decision that is not questioned by the majority) and specifically told the jury that it did not have to determine whether Castillo-Basa had appeared before the immigration judge. *Id*. at 910. Moreover, Castillo-Basa offered arguments that a deportation hearing had not occurred, even outside his presence, including:

1. No fingerprint or photograph on the deportation order;

2. The government's failure to call the Immigration Judge as a witness;

3. The government's failure to present the "master list" from the proceedings, which should have

included Castillo-Basa's name if he had been
deported;

4.   The absence of a tape recording or transcript of
the deportation proceedings;

5.   The failure to produce detention records; and

6.   The "fact" that persons in deportation hearings
often give false names.

*Castillo-Basa*, 478 F.3d 907. These flaws in the government's
case-in-chief are more than sufficient to show that Castillo-
Basa's veracity was not "necessarily decided in the first case."
*Hernandez*, 572 F.2d at 220. Indeed, a reasonable juror could
have determined that any one of these factors, or a combina-
tion of these factors, raised a reasonable doubt as to whether
a deportation had occurred. In other words, "a rational jury
could have grounded its verdict upon an issue other than that
which the defendant seeks to foreclose from consideration."
*Ashe*, 397 U.S. at 444.

### III.

The majority's revision of the criteria for the application of
a collateral estoppel bar is also contrary to the Supreme
Court's refinement of the bar in *Dowling v. United States*, 493
U.S. 342 (1990). In *Dowling*, the Supreme Court emphasized
its language in *Ashe* that "when an issue of *ultimate fact* has
once been determined by a valid and final judgment, that
issue cannot again be litigated between the same parties in
any future lawsuit." *Id*. at 347 (quoting *Ashe*, 397 U.S. at 443)
(emphasis added). Although the situation in *Dowling* is very
different from the situation at bar, the Supreme Court's lan-
guage is instructive. The Court wrote:

Dowling contends that, by the same principle, his
prior acquittal precluded the Government from intro-

ducing into evidence Henry's testimony at the third trial in the bank robbery case. We disagree because, unlike the situation in *Ashe v. Swenson,* the prior acquittal did not determine an ultimate issue in the present case. This much Dowling concedes, and we decline to extend *Ashe v. Swenson* and the collateral-estoppel component of the Double Jeopardy Clause to exclude in all circumstances, as Dowling would have it, relevant and probative evidence that is otherwise admissible under the Rules of Evidence simply because it relates to alleged criminal conduct for which a defendant has been acquitted.

*Id.* at 348. Similarly here, Castillo-Basa's acquittal in the first case "did not determine an ultimate issue" raised by the charges of perjury. The issue in the first case was whether "a deportation proceeding occurred as to [the] defendant." *Castillo-Basa*, 478 F.3d at 898. The ultimate issue raised by Castillo-Basa's subsequent indictment is whether he lied when he testified that he did not physically appear before an immigration judge. Since the jury in the first trial was specifically instructed that the government did not have to prove Castillo-Basa's presence at the deportation hearing, *see id.* at 910, Castillo-Basa's testimony that he was not present did not concern an "ultimate issue."

IV.

Finally, my dissent is prompted by concerns with the practical consequences of the panel majority's decision. Our system relies heavily on individuals telling the truth under oath.[1] Nonetheless, where a defendant secures an acquittal by lying

---

[1]*See United States v. Mandujano*, 425 U.S. 564, 576 (1976) ("In this constitutional process of securing a witness' testimony, perjury simply has no place whatever. Perjured testimony is an obvious and flagrant affront to the basic concepts of judicial proceedings. Effective restraints against this type of egregious offense are therefore imperative.")

*about an element of a crime*, the Double Jeopardy Clause bars the government from seeking to retry the defendant for the first offense or prosecuting the defendant for perjury.**²** But the majority's approach expands this perjury exemption, thus undermining one of the critical means for ensuring truthful testimony. If a defendant cannot be tried for perjury, what motive does he have to tell the truth? If he lies and is convicted, he has risked little, but if he lies and gains an acquittal, according to the panel majority, as long as the lie is relevant to an underlying issue, he could not be charged with perjury. The panel majority's attempt to uncouple the collateral estoppel bar from the ultimate issues in the cases is no mere technicality as a defendant has little motivation to lie unless he or she thinks that the lie is somehow related to the pending charges. Collateral estoppel should only bar prosecution for perjury that addressed the ultimate issue in the first trial.

Despite the panel majority's assertion to the contrary, I fear its opinion will be read as creating "a per se bar against perjury prosecutions involving defendants who testify and are acquitted at trial." *Castillo-Basa*, 478 F.3d at 905. The opinion states:

> When an acquitting jury has not necessarily or actually decided the question of a defendant's veracity, or a material issue sufficiently similar to one the prosecution must establish in the prospective second proceeding, collateral estoppel does not bar a subsequent trial for perjury.

*Id*. Although this sentence starts with the implication that a jury must "necessarily" have decided the issue, its clauses are connected with the word "or." Accordingly, the sentence may

---

**²**I agree with Judge Trott's statement in his dissent "that if the perjury charge were based on [Castillo-Basa's] testimony to the effect that he was 'not deported,' collateral estoppel might apply." *Castillo-Basa*, 478 F.3d at 909.

be read as providing that, if the first jury decided "a material issue sufficiently similar to one the prosecution must establish in the prospective second proceeding," collateral estoppel bars prosecution for perjury. But a new standard for collateral estoppel based on "a material issue sufficiently similar," would conflict with the Supreme Court's position in *Ashe* and *Dowling* and our reiteration in *Hernandez* that collateral estoppel only applies when "the issue was necessarily decided in the first case." 572 F.2d at 220. In light of the panel majority's strained interpretation of the facts, a reasonable reader may well conclude that the panel majority created a new standard. I would not create such a standard nor impose the interpretation of the panel majority's opinion on the district courts.

Following the Supreme Court's opinion in *Ashe*, 397 U.S. 436, we held that, for collateral estoppel to bar a subsequent prosecution for perjury in a criminal action, the defendant had to show that the issue that was the subject of the perjury "was necessarily decided in the first case." *Hernandez*, 572 F.2d at 220. For over a quarter of a century, we have adhered to this standard. We should have taken this case en banc to correct the panel majority's expansion of this standard and manipulation of the facts, and to re-emphasize that the collateral estoppel bar only applies — as the Supreme Court has stated — when a rational jury could not "have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe*, 397 U.S. at 444.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2007 Thomson/West.