**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Charles W. McCALL & Jay M. Lapine,**
**Defendants–Appellants.**

**Nos. 07–10543, 07–10544.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 24, 2008.

Filed Oct. 31, 2008.

Timothy P. Crudo, Esq., USSF—Office of the U.S. Attorney, San Francisco, CA, for Plaintiff–Appellee.

Michael J. Shepard, Esq., Heller Ehrman, LLP, Lyn R. Agre, Kasowitz, Benson, Torres & Friedman LLP San Francisco, CA, Theodore V. Wells, Esq., Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY, for Defendants–Appellants.

Before: GOODWIN, BEEZER, and BYBEE, Circuit Judges.

## MEMORANDUM *

Defendants Charles McCall and Jay Lapine appeal the denial of their motions to dismiss and for acquittal on securities fraud and related charges. Defendants were executives of HBO & Company ("HBOC") when three other HBOC executives engaged in a securities fraud scheme

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

to falsely inflate the company's revenues. Following an eight-week trial, the jury acquitted both defendants of conspiracy to commit securities fraud. The jury was deadlocked on the remaining six counts, and the district court declared a mistrial. This appeal follows the district court's subsequent ruling that double jeopardy and collateral estoppel principles do not bar the government from again prosecuting the deadlocked counts.

"[T]he district court's order denying [defendants'] motion to dismiss the indictment on double jeopardy grounds is appealable as a final order" under 28 U.S.C. § 1291 (2000). *United States v. Cejas,* 817 F.2d 595, 596 (9th Cir.1987). We review the district court's ruling de novo. *United States v. Castillo-Basa,* 483 F.3d 890, 895 (9th Cir.), *reh'g denied,* 494 F.3d 1217 (9th Cir.2007). We affirm.

■ First, defendants argue that the jury, in acquitting on the conspiracy charge, "necessarily determined" that they did not participate in the securities fraud. However, given the prosecution's evidence and closing argument, as well as the jury instructions, defendants fail to meet their burden "to demonstrate that the issue whose relitigation [they] seek[ ] to foreclose was actually decided in the first proceeding." *Dowling v. United States,* 493 U.S. 342, 350, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). "It has long been recognized that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses." *Sealfon v. United States,* 332 U.S. 575, 578, 68 S.Ct. 237, 92 L.Ed. 180 (1948). In deciding to acquit on the conspiracy charge, the jury might have discredited some of the prosecution's evidence or found such evidence insufficient to establish defendants' participation in the conspiracy, without necessarily deciding whether defendants committed the substantive crimes. Based on the testimony of several witnesses who outlined defendants' individual roles in the fraud occurring at HBOC, rational jurors could have concluded that defendants could be held liable for their own fraudulent misconduct even if they did not knowingly participate in the conspiracy of their colleagues. The cases upon which defendants rely are unavailing because, unlike here, in each case the trial record clearly established that an issue subject to proof at retrial was necessarily decided at the first trial. *See, e.g., id.* at 580, 68 S.Ct. 237; *Castillo-Basa,* 483 F.3d at 898–99; *United States v. Hernandez,* 572 F.2d 218, 222 (9th Cir.1978).

■ Second, defendants argue that the prosecution's focus on co-conspirator liability at trial precludes a retrial of the undecided charges with the prosecution attempting to prove aiding and abetting as well as individual criminal acts. The Double Jeopardy Clause prohibits the government form relitigating a second time under an alternative theory. *Williams v. Warden,* 422 F.3d 1006, 1011 (9th Cir.2005). However, that is not the scenario here. Although the prosecution emphasized co-conspirator liability in the first trial, it also presented evidence and argument supporting direct and aiding and abetting liability. In its closing argument, the prosecution informed the jury of the three potential theories of liability for the substantive counts. Earlier in the summation, referring to defendants, the prosecution argued to the jury that "[i]ndividually and together they committed securities fraud." In addition, the prosecution expressly argued to the jury that Lapine's involvement in HBOC's fraudulent 1998 transaction with the University of Pittsburgh Medical Center would justify aiding and abetting liability. In the rebuttal argument, the prosecution again referred to the alternative theories. Likewise, the jury instructions specifically informed the jury of the legal requirements for both co-conspirator and

aiding and abetting liability. Because the jury was aware of the multiple theories of liability, the prosecution's failure to prove the conspiracy theory does not preclude a retrial focusing on direct or aiding and abetting theories.

■ Third, defendants argue that the conspiracy acquittal precludes the government from retrying them on an aiding and abetting theory of liability. "An acquittal for conspiracy does not preclude conviction for aiding and abetting unless the acquittal results in a finding of fact in favor of the defendant which is essential to the substantive offense." *United States v. Tierney*, 424 F.2d 643, 645 (9th Cir.1970); *see also Pereira v. United States*, 347 U.S. 1, 11, 74 S.Ct. 358, 98 L.Ed. 435 (1954). On the aiding and abetting theory, the jury was instructed that defendants were liable if they "knowingly and intentionally aided, counseled, commanded, induced or procured [another] to commit each element of the crimes." The jury could have rationally concluded that, although defendants were not members of their colleagues' conspiracy, the evidence supported aiding and abetting liability on the remaining counts. *See Tierney*, 424 F.2d at 646. Moreover, the jury did not necessarily discredit such evidence in reaching its acquittal. If, as the acquittal suggests, the jury determined that defendants did not knowingly and willfully participate in the conspiracy, defendants still may have "consciously share[d] in a criminal act, regardless of the existence of a conspiracy." *Pereira*, 347 U.S. at 11, 74 S.Ct. 358. Defendants' liability on the deadlocked counts, and the strength of the government's evidence regarding those counts, remain open questions.

AFFIRMED.